FILED
JUL 3 1 2006

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| DALSIN, INC., a South Dakota Corporation, | \* | CIV 05-3040 |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| -vs- | \* | |
| | \* | |
| BODELL CONSTRUCION COMPANY, | \* | OPINION AND ORDER |
| INC., a Utah Corporation; and | \* | |
| REIBER-BODELL, CONSTRUCTION | \* | |
| COMPANY, INC., a Montana Corporation, | \* | |
| | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Dalsin, Inc. ("Dalsin") filed this action against the defendants, Bodell Construction Company, Inc. ("Bodell") and Reiber-Bodell Construction Company, Inc. ("Reiber"), seeking damages for Reiber's claimed breach of two contracts.[1] On January 23, 2006, the defendants filed a motion to dismiss and motion to compel arbitration (Doc. 7). The defendants claim that the Court is without jurisdiction over the subject matter of plaintiff's complaint due to express provisions of the written contracts which require the binding arbitration of Dalsin's claims. In the alternative, the defendants move that the Court enter an order staying any further proceedings in the action and compelling the arbitration of the claims.

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (1994), "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991).[2] The FAA declares that written agreements to resolve disputes through

---

[1] Reiber-Bodell Construction Company, Inc., is the successor to Bodell Construction Company, Inc., on both construction projects at issue. Originally, there was some question as to whether Bodell was properly served with the complaint. Defendants have informed the Court that they are not formally contesting the sufficiency of the service upon Bodell since Bodell and Reiber-Bodell are essentially a joint venture on these construction projects and are both aware of the complaint.

[2] Although the parties cite primarily to South Dakota cases involving the Uniform Arbitration Act, as adopted by the South Dakota Legislature at SDCL 21-25A, the contracts involved in this case evidence a transaction involving commerce. 9 U.S.C. §§ 1, 2; Allied-Bruce

arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The effect of the FAA was to 'create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" Gannon v. Circuit City Stores, Inc., 262 F.3d 677 (8th Cir. 2001) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). The Court is to rigorously enforce arbitration agreements because of the federal policy favoring arbitration. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

9 U.S.C. § 4 states, in relevant part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed . . . ." The Court is to determine whether the parties have entered into a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement. Gannon, 262 F.3d at 680. The question in the instant case is whether a binding agreement to arbitrate exists between Dalsin and the defendants.

There were two subcontract agreements between Dalsin and Reiber, both providing that Dalsin was to complete roofing work as per plans and specifications set out in the agreements. One of the agreements dealt with the construction of a Wal-Mart store in Pierre, South Dakota. The other dealt with the construction of a Wal-Mart store in Spearfish, South Dakota. The subcontract agreements between Dalsin and Reiber incorporated the terms and conditions of the prime contract ("prime contract"), which, in turn, incorporated the terms and conditions of AIA

---

Terminix Comps. v. Dobson, 513 U.S. 265 (1995) (§ 2's "involving commerce" standard reaches to limits of Commerce Clause power). The United States Supreme Court has held that the FAA may constitutionally be applied to proceedings in a federal diversity court. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404-05 (1967). *See also* UHC Mgmt. Co. v. Computer Sciences Corp., 148 F.3d 992 (8th Cir. 1998) (arbitration agreement does not preclude the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear); Doctor's Associates, Inc. v. Distajo, 107 F.3d 126, 131 (2d Cir.), cert. denied 118 S. Ct. 365 (1997) (federal courts are not required to apply state law "unless it is clear that the parties intended state arbitration law to apply on a particular issue.").

Document A-201, General Conditions ("AIA Agreement"). Paragraph 8 of each subcontract provides:

> In the event of any dispute between the Contractor and Subcontractor covering the scope of the work, the dispute shall be settled in the manner provided by the contract documents. If none be provided, or if there arises any dispute concerning matters in connection with this Agreement, and without the scope of the work, then such disputes shall be settled by a ruling of a board of arbitration consisting of three members, one selected by the Contractor, one by the Subcontractor and the third member shall be selected by the first two members. The Contractor and Subcontractor agree to be bound by the findings of any such boards of arbitration, finally and without recourse to any court of law. If the Contractor and Subcontractor become involved in litigation or arbitration as a result of this Subcontract or the performance or nonperformance thereof, then the court or arbitration tribunal shall award reasonable attorney's fees and expenses, including expert witness fees, to the prevailing party.

Dalsin argues that the parties specifically struck the arbitration provisions from the AIA Agreement.[3] Dalsin argues that this deletion of the arbitration provisions evinces the clear intention of the parties that arbitration is not required and that disputes may be resolved through litigation. Moreover, Dalsin contends that the fact that Paragraph 8 of the subcontract specifically defers to the provisions of the prime contract documents supports that interpretation.

The Court is to examine arbitration agreements in the same light as any other contractual agreement, and the Court applies South Dakota contract principles in deciding whether the parties have agreed to arbitrate. Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999). There are many problems with Dalsin's purported reading of the subcontract. First, Dalsin was not a party to the AIA contract and played no part in negotiating its terms. To say that it "specifically agreed to strike" the arbitration provision is incorrect. Second, as recited above, paragraph 8 provides that, in the event of a dispute, the dispute shall be settled in the manner provided by the contract documents. Dalsin contends that, because the prime contract documents contain no manner for the resolution of disputes, the parties' intent was to allow for claims to be litigated. This reading would make some sense if paragraph 8 was comprised of only the first sentence. However, the second sentence of paragraph 8 states that if no manner for

---

[3] The Court has not seen a copy of the prime contract or the AIA Agreement, but takes what is stated by the parties to be true. There is no dispute about whether the arbitration clause was struck from this agreement. The only dispute concerns the legal effect of the clause being stricken in conjunction with the arbitration provision in the subcontracts.

resolving disputes is provided, then such disputes shall be settled by a ruling of a board of arbitration. Stated another way, Dalsin's subcontract contains a separate and express arbitration provision which has not been stricken or altered in any way. Dalsin's suggested reading of paragraph 8 would effectively negate the parties' agreement to arbitrate their disputes, and render the bulk of paragraph 8 meaningless. Such a reading would not be countenanced under the interpretive maxims of South Dakota contract law. *See e.g.* Prunty Constr., Inc. v. City of Canistota, 2004 SD 78, 682 N.W.2d 749 (2004) (to the extent possible, all provisions of a contract must be given meaning).

The defendants cite Midwest Mechanical Contractors, Inc. v. Commonwealth Construction Co., 801 F.2d 748 (5th Cir. 1986), in which the Fifth Circuit Court of Appeals considered a similar situation. Commonwealth executed a subcontract with Midwest for work in conjunction with Midwest's expansion project at a sewage treatment plant. The subcontract between Commonwealth and Midwest provided that disputes between the parties would be decided by arbitration. It also provided that the arbitration "shall be conducted in the same manner and under the same procedure as provided in the Contract Documents with respect to disputes between the Owners and Contractor . . ." The contract between the owner and the contractor provided that disputes would be settled by arbitration "if the parties mutually agree, or in a court of competent jurisdiction within the State in which the owner is located." A dispute between the parties arose, and Commonwealth filed a demand with the American Arbitration Association for arbitration of the dispute. Midwest objected to arbitration and filed an action in federal court, claiming that because the parties did not "mutually agree" to arbitration, the dispute must be resolved through litigation as provided in the general contract. Commonwealth moved to stay litigation pending arbitration. The district court denied the motion and Commonwealth appealed. The Court of Appeals agreed with Commonwealth, and stated:

> The agreement to arbitrate in the subcontract is unambiguous. Reference to the general contract is required only to determine which procedures will govern the arbitration process; it does not control whether or not disputes will be arbitrated, a question that is not left open by the subcontract. Indeed, the language in the general contract cited by Midwest is completely irrelevant in this case, since it does not "specify the manner and procedure for arbitration" even when the parties do mutually agree to arbitrate -- but simply states that such disputes "will be decided by arbitration. . . . "

*Id.* at 753. *See also* Albertson's, Inc. v. PDG, Inc., 2002 WL 31298862 (N.D. Tex. Oct. 8, 2002).

Similarly, the subcontract in this case is unambiguous. It could not be more clear that, since the prime contract specified no mechanism for the resolution of disputes, the parties agreed to submit their disputes to arbitration.

The FAA requires the Court to stay these proceedings if it is satisfied that the issues before it are arbitrable. *See* Aristo Industries, Inc. v. Sho-Me Livestock Cooperative, CIV. 06-4079, 2006 U.S. Dist. LEXIS 33669 (D.S.D. May 16, 2006) (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-26 (1987)); 9 U.S.C. § 3.

The question that remains is whether the proper remedy is to stay the proceedings or dismiss the case. The defendants seek the latter. The United States Court of Appeals for the Eighth Circuit has not squarely addressed the issue. In Pro Tech Industries, Inc. v. URS Corporation, 377 F.3d 868, 869 (8th Cir. 2004), the dismissal of a lawsuit in favor of arbitration was affirmed, but the Court did not discuss the propriety of the dismissal. There is ample authority which suggests that 9 U.S.C. § 3 does not limit the Court's ability to dismiss a case when the issues before it can be properly submitted to arbitration. *See e.g.* Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("[N]otwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."), Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) ("[T]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."), Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 & n. 21 (1st Cir. 1998) (question of whether to dismiss or stay an action subject to arbitration depends on whether all issues before the court are arbitrable), Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (court did not err in dismissing, rather than staying, case where all issues were required to be submitted to arbitration), and Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal). Other courts have been more reluctant to find that § 3 permits dismissal, insisting that the proper course is to stay the action pending arbitration. *See e.g.* Lloyd v. Hovensa, 369 F.3d 263, 269 (3rd Cir. 2004) (the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration), and Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953,

955 (10th Cir. 1994) (vacating district court's order of dismissal and remanding for entry of a stay pending arbitration).

A valid agreement to arbitrate exists between Dalsin and the defendants. The agreement encompasses the instant disputes. For the reasons discussed above, the Court will grant the defendants' motion to compel arbitration. In an abundance of caution, the Court will stay this action pending arbitration, rather than dismissing it.

Now, therefore,

IT IS ORDERED:

(1)  Reiber's motion to compel arbitration, Doc. 7, is granted.

(2)  Reiber's motion to dismiss, Doc. 7, is denied.

(3)  Dalsin is ordered to forthwith and without delay submit to arbitration pursuant to the terms of the subcontract, this to include all claims of Dalsin against the defendants and all claims of the defendants against Dalsin arising out of or related to the subcontract.

(4)  This action is stayed pending arbitration between the parties or a further order of this Court.

Dated this 31st day of July, 2006.

BY THE COURT:

*(signature)*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY *(signature)*
         DEPUTY
SEAL

6